IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Michael Louis Johnson, #285485, ) | |
| ) | Civil Action No. 6:06-2544-SB-WMC |
| Petitioner, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Colie Rushton, Warden; Henry ) | |
| McMaster, Attorney General for ) | |
| South Carolina, ) | |
| ) | |
| Respondents. ) | |

The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

## FACTS PRESENTED

The record reveals that the petitioner is currently confined in the McCormick Correctional Institution of the South Carolina Department of Corrections ("SCDC"), pursuant to commitment orders from the Greenville County Clerk of Court. The Greenville County Grand Jury indicted the petitioner at the October 1998 term of court for murder (98-GS-23-5129). On May 24-25, 1999, the petitioner, represented by attorney Clay T. Allen, received a jury trial before the Honorable H. Dean Hall. The jury convicted him of murder, and Judge Hall sentenced him to life imprisonment.

The petitioner timely served and filed a notice of appeal.  Assistant Appellate Defender Robert M. Dudek represented the petitioner on appeal.  On February 9, 2001, the petitioner's counsel filed a final *Anders* brief of appellant[1] and a petition to be relieved as counsel, in which he presented the following issue for review:

> Whether the trial judge erred by refusing to suppress appellant's confession where appellant was given *Miranda* warnings while not in custody, and later confessed to a private polygraph operator, who did not give appellant *Miranda* warnings even though appellant was then in custody, since the private operator should have given appellant *Miranda* warnings before advising him to "straighten out" the situation with the police?

Assistant Attorney General Robert E. Bogan represented the State on appeal.  By memorandum opinion filed April 2, 2002, the South Carolina Supreme Court affirmed the petitioner's conviction and granted counsel's motion to be relieved.  *State v. Johnson,* 2002-MO-028 (S.C. Sup. Ct., filed Apr. 2, 2002).  The South Carolina Supreme Court sent the remittitur to the Greenville County Clerk of Court on April 18, 2002.

The petitioner filed a *pro se* post-conviction relief ("PCR") application (02-CP-23-5978) on August 30, 2002, in which he alleged the following grounds for relief:

(1)     The courts lacked subject matter jurisdiction;

(2)     Violations of the Miranda Rule;

(3)     Ineffective assistance of counsel;

(4)     Violation of the "contrary to" claus[e]; and

(5)     Violations of substantive due process of law; and procedural.

The petitioner also filed a motion for appointment of counsel contemporaneously with the PCR application.  The State filed its return on February 21, 2003.

---

[1]*Anders v. California*, 386 U.S. 738 (1967).

2

The Honorable J. Michael Baxley held an evidentiary hearing into the matter on December 3, 2003, at the Greenville County Courthouse. The petitioner was present at the hearing, and attorney Kenneth Gibson represented him. Assistant Attorney General Christopher Newton represented the State. The petitioner testified on his own behalf, while the State presented the testimony of trial counsel, Mr. Allen.

On February 6, 2004, Judge Baxley filed an order denying denied relief and dismissing the application with prejudice. The order addresses the allegations of ineffective assistance of counsel based upon counsel's failure to adequately discuss the case with the petitioner; counsel's failure to attempt to negotiate a plea bargain on the petitioner's behalf; counsel's advice that he not testify at trial; counsel's failure to object to testimony that the petitioner failed a polygraph; and counsel's failure to adequately challenge the admissibility of the petitioner's statement. The order also addresses the alleged lack of subject matter jurisdiction, based upon the State's failure to try the petitioner within 180 days of his arrest and a procedural due process violation. Based upon the petitioner's disrespectful and combative behavior at the evidentiary hearing, which ultimately resulted in his removal from the courtroom, Judge Baxley further found that the petitioner was "in direct, criminal contempt" of court and summarily sentenced him to six months imprisonment, consecutive to his life sentence.

A timely notice of appeal was served and filed. Assistant Appellate Defender Robert M. Pachak represented the petitioner in collateral appellate proceedings. On September 10, 2004, Mr. Pachak filed a *Johnson* petition for writ of certiorari and petition to be relieved as counsel on the petitioner's behalf. The only issue presented in the petition for writ of certiorari was stated as follows:

> Whether petitioner should have been held in criminal contempt when his conduct was not directed to the PCR court?

3

*Johnson* petition for writ of certiorari at p. 2.  The State filed a letter response to the *Johnson* petition on September 13, 2004.  The petitioner filed appellant's *pro se* brief in response to the *Johnson* petition on November 2, 2004, in which he presented the following issues:

> (1)    Subject Matter Jurisdiction;
>
> (2)    Reasonable Doubt;
>
> (3)    Refuse to Let Testify;
>
> (4)    Prosecutorial Misconduct;
>
> (5)    Direct Verdict;
>
> (6)    Malice Instruction;
>
> (7)    Ineffective Assistance of Counsel; and
>
> (8)    Violation of the Miranda Rule.

The South Carolina Supreme Court filed an Order on October 19, 2005, in which it denied certiorari and granted counsel's request to withdraw.  The petitioner filed a petition for rehearing and rehearing en banc on October 28, 2005.  The South Carolina Supreme Court denied the rehearing petition on November 17, 2005 and sent the remittitur to the Greenville County Clerk of Court on the same date.

In his petition now before this court, the petitioner raises the following allegations (verbatim):

> **GROUND ONE:**  Ineffective assistance of counsel's A). Clay T. Allen, B). Robert M. Dudek (A.A.D.), C). Kenneth Gibson (PCR Counsel) D). Robert M. Pachak (A.A.D.)
> **SUPPORTING FACTS:**  A) Trial counsel violated the appellate Rights by (1) refusing to let testify, (2) client and counsel established a conflict of interest, (3) prejudice proformance of investigation, (4) committed prejury, failure to object to the presentment of the state evidence and witness, and (5) waiver of all of defendant (Appellate) constitutional Rights and more.
> (B) Robert M. Dudek, (c) Kenneth Gibson, (d) Robert M.

4

Pachak, all failed to provide Appellant motion of Discover. Which prejudiced Appellant.

**GROUND TWO:** Lack of subject matter jurisdiction
**SUPPORTING FACTS:** (1) To convict a defendant for an offense where there is no Indictment charging him with that offense when the jury was sworn (2) The Indictment failure to allege the element which deprives the trial court of subject matter jurisdiction to have the facts changes (3) To conduct a trial of a criminal charge where there has been no Presentment of an Indictment by the grand jury, or a written waiver, To impose a sentence for an offense no charge in the Indictment.

**GROUND THREE:** Procedural Due process violation
**SUPPORTING FACTS:** To incorporate the Reasons, and bring such together, Applicant: argues of his case, and conviction, was obtained by an illegal tactic advantage of the courts: and a [fundamental miscarriage of Justice] in that he was not afforded his full constitutional Rights. And equal protection as to those laws: by the state not advising him of his miranda rights: prior to questioning and taking statements; as well as being mentally impaired and handicapped by his education level and comprehension: and that further "burden shifting" was done by the State: in addition to the fact that Applicant counsel; never had Represented a client in a murder case; and last, That the Courts proceded (sic) without establishing; and/or acquiring subject matter jurisdiction; in that the state went over the ["180 day rule"]: as well the Court admst. not "clock-date-stamp" filing the indictment which violated applicant substantive due process as well as procedural.

**GROUND FOUR:** Violation of the contrary to claws.
**SUPPORTING FACTS:** Of further violation, the Applicant would state that the Courts were in violation of the "contrary To Claws," of regarding applicability of the law: of the law being "unreasonable applied" not to the full extent: incorrect applied "not being applied the Right way or proper: and "erroneous application" meaning the wrong law being applied: all together: of such applicant states that of the transcript of record: that already the judge allowed the Jury as well as the Court: "use preponderance of evidence" to convict the Applicant; when in fact such should have been "beyond a reasonable doubt; which is burden sifting, and is procedurally as well as substantively unfair to the Applicant: as it was for the state to prove their case beyond a Reasonable doubt, and not the defendant; as to being innocent.

5

**GROUND FIVE:**  Violation of the Miranda Rule
**SUPPORTING  FACTS:**  .... prior  to  questioning  or  being subject to interrogation, such comes into play of which the Applicant was questioned as to the surrounding facts, but the officer never advised (Applicant) of his four main rights, prior to questioning ...

**GROUND SIX:**  Prosecutorial Misconduct
**SUPPORTING  FACTS:**  Perjury, subornation of perjury and false swearing ... two other witness[es] testified concerning the presentment of evidence, Police office testimony was so tainted fibercated, deliberate falsehood or Recklessly disregarding the truth.

Trial counsel failed to make an objection to the introduction to this man testimony, counsel committed perjury in court, He knew of this man at the Preliminary hearing, This was mere prejudicial to his client.

**GROUND SEVEN:**  Malice Charge
**SUPPORTING FACTS:** Instruction on element of malice in this State Capital murder prosecution which charged that malice is implied or presumed from the willful, delibrate and intentional doing of an unlawful act without just cause or excuse. To have state  prove  each  element  of  charged  offense  beyond Reasonable Doubt.

On  December  15,  2006,  the  respondents  filed  a  motion  for  summary judgment.  By order filed December 18, 2006, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. After being granted two extensions of time, the petitioner filed his response to the motion for summary judgment,[2] which included his own motion for summary judgment, on April 2, 2007.

---

[2]The petitioner's brief is over 100 pages long, clearly in violation of Local Civil Rule 7.05(B) DSC. Rule 7.05(B) provides that no initial brief of a party shall exceed 35 pages, unless an exception is granted by the court, which is not the case here.  The petitioner is cautioned that in future filings he should abide by the Federal Rules of Civil Procedure as well as the Local Civil Rules.

## APPLICABLE LAW

Title 28, United States Code, Section 2254(d) and (e), provides in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that

7

a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

## ANALYSIS

### Procedural Bar

Several of the petitioner's claims are procedurally barred from review. If a petitioner before a federal district court fails to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed

his opportunity for relief in state courts.  In such a case, a federal district court is barred from considering the habeas claim absent a showing of cause and actual prejudice or that failure to consider the claim will result in a fundamental miscarriage of justice, as the exhaustion requirement is technically met and the rules of procedural bar apply.  *Matthews v. Evatt*, 105 F.3d 907, 916 (4th Cir. 1997) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

The petitioner's allegations in ground one concerning conflict of interest, counsel's inadequate investigation into the circumstances of the statement, and ineffective assistance of appellate and collateral counsel were defaulted because they were never passed upon by the PCR judge and because they were not raised in the state supreme court.  The petitioner cannot show prejudice from the default because he failed to present evidence in support of these claims.

The petitioner alleges in ground two that the trial court lacked subject matter jurisdiction because the indictments did not conform with the requirements of South Carolina Rule of Criminal Procedure 3.  This allegation was presented to the state supreme court in Issue 1 of "Appellant's Pro-Se Brief," filed by the petitioner on certiorari.  However, this issue would not have been considered on certiorari because the petitioner did not obtain a ruling from the PCR judge on the alleged violation of Rule 3 (app. 381-86).  *See Pruitt v. State*, 423 S.E.2d 127, 128 n.2 (S.C. 1992) (noting general rule that issue must be raised to and ruled on by the PCR judge in order to be preserved for review).  As a result, the claim is procedurally defaulted under *Coleman,* 501 U.S. at 729-30.  *See also Kornahrens v. Evatt*, 66 F.3d 1350, 1362 (4th Cir. 1995) (even under *in favorem vitae* review an inmate's claim is procedurally barred unless specifically raised to the state supreme court).

In ground three, the petitioner's claims related to counsel's lack of experience and lack of subject matter jurisdiction based upon the alleged Rule 3 violation are

9

procedurally defaulted.  The claim regarding counsel's lack of experience was not raised in the PCR court, although it was raised on page 14 of "Appellant's Pro-Se Brief." *See Pruitt,* 423 S.E.2d at 128 n.2 (S.C. 1992) (noting general rule that issue must be raised to and ruled on by the PCR judge in order to be preserved for review).  As a result, the claim is procedurally defaulted under *Coleman*, 501 U.S. at 729-30.  There is no prejudice from the default because prejudice is not presumed from the fact that this may have been counsel's first murder trial.  Rather, the petitioner had to show actual prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984), which he did not do.  *See United States v. Cronic*, 466 U.S. 648, 665 (1984) (" The character of a particular lawyer's experience may shed light in an evaluation of his actual performance, but it does not justify a presumption of ineffectiveness in the absence of such an evaluation.").  As set forth above with regard to ground two, the Rule 3 issue would not have been considered on certiorari because the petitioner did not obtain a ruling from the PCR judge on the alleged violation (app. 381-86).

In ground four, the petitioner contends that the jury was allowed to convict him based upon a preponderance of the evidence instead of requiring proof "beyond a reasonable doubt."  Again, this is a procedurally defaulted claim under *Coleman* because, although this issue was raised on page 4 of "Appellant's Pro-Se Brief," the petitioner failed to obtain a ruling thereon from the PCR judge (app. 381-86).  As a result, the issue would not have been considered by the state supreme court.  Further, the petitioner cannot show cause for and prejudice from the default.

In ground six, the petitioner asserts that his conviction must be overturned because of prosecutorial misconduct in the form of subornation of perjury and false swearing by police.  This is an issue that was raised on page 4 of "Appellant's Pro-Se Brief," but the petitioner failed to obtain a ruling thereon from the PCR judge (app. 381-86).  As a result, the issue would not have been considered by the state supreme court under *Pruitt*, 423 S.E.2d at 128 n.2 (S.C. 1992) (noting general rule that issue must be raised to and

10

ruled on by the PCR judge in order to be preserved for review). Thus it is procedurally defaulted under *Coleman*. Further, the petitioner cannot show cause for and prejudice from the default. He cannot show prejudice because in *Napue v. Illinois,* 360 U.S. 264, 269 (1959), the Court held that due process is generally denied if the government knowingly uses perjured testimony against the accused to obtain a conviction. "The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Id.* In order to meet his burden of proof, a defendant must show that perjured testimony was presented; that the prosecution knew the evidence was false; and that "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Boyd v. French,* 147 F.3d 319, 330 (4th Cir. 1998). Here, the only "proof" offered by the petitioner was his uncorroborated testimony, which the PCR judge found was not credible. Therefore, this allegation lacks merit.

In ground seven, the petitioner alleges that the trial judge's malice instruction, "which charged that malice is implied or presumed from the willful, delibrate (sic) and intentional doing of an unlawful act without just cause or excuse" shifted the burden of proof to the petitioner and relieved the State of its burden of proving each element of murder beyond a reasonable doubt. Although this issue was raised on page 6 of "Appellant's Pro-Se Brief," the petitioner failed to obtain a ruling thereon from the PCR judge (app. 381-86). As a result, the issue would not have been considered by the state supreme court.

Further, the petitioner cannot show cause for and prejudice from the default. The malice charge given in this case was constitutional. As argued by the respondents, the trial judge's implied malice instruction did not violate either *Sandstrom v. Montana,* 442 U.S. 510, 524 (1979) or *State v. Elmore,* 308 S.E.2d 781 (S.C. 1983) (holding that a jury could be instructed only that malice "may" be implied from the use of a deadly weapon), *overruled on other grounds by State v. Torrence*, 406 S.E.2d 315, 328 n. 5 (S.C.1991). Therefore, he cannot show any prejudice from trial counsel's failure to object to this instruction (resp.

11

m.s.j. 28-29).   Contrary to those jury instructions which have found to be unconstitutional under these cases, the trial judge's instruction in this case did not use words such as "rebuttable" or "presumption" (app. 298-300).   *See Gilbert v. Moore,* 134 F.3d. 642, 647-52 (4th Cir. 1998) (en banc) (finding that jury instruction referring to rebuttable "presumption of malice" was unconstitutional but concluding that any error was harmless beyond a reasonable doubt).   Instead, the challenged jury instruction tracks the language set forth in *Elmore* and is constitutional.   *Id.*

### Merits

The petitioner obtained rulings on several of his allegations in the state PCR court.   Accordingly, those claims will be considered on the merits.   In ground one, the petitioner raised a number of allegations of ineffective assistance of counsel.   Claims of ineffective assistance of counsel are governed by the two-part test established in *Strickland v. Washington*, 466 U.S. 668 (1984).   First, the petitioner "must show that counsel's performance was deficient."   *Id.* at 687.   To prove deficiency, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness."   *Id.* at 688. Second, the petitioner must show that the deficient performance actually prejudiced him, *i.e.* "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."   *Id.* at 694.   Finally, the Court in *Strickland* held that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies," and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."   *Id.* at 697.   Review of counsel's performance is "highly deferential."   *Id.* at 689.

The petitioner first asserts that trial counsel was ineffective for advising him not to testify on his own behalf.   The petitioner testified at the state PCR hearing that trial

counsel should have let him testify on his own behalf, but trial counsel had advised him against it because counsel did not want him to incriminate himself. The petitioner claimed that he could have helped himself and the jury would not have heard only one side of the story (app. 368). On the other hand, trial counsel testified that he had discussed the entire case with the petitioner. He tried to negotiate a plea, but the Solicitor refused any deals. He advised the petitioner not to testify because of the petitioner's version of the incident to counsel admitted that he had struck the victim twice with a pipe, and he did not want the jury to hear this (app. 372-75).

The PCR judge concluded that trial counsel's testimony was credible and that the petitioner had failed to prove deficient performance (app. 384-85). The respondents argue that the petitioner's contentions are conclusory and general. He did not allege how his attorney prevented him from testifying and appears to have been aware of his absolute right to testify. An attorney's tactical decision in advising his client not to testify does not amount to ineffective assistance. *See Hutchins v. Garrison*, 724 F.2d 1425, 1436 (4th Cir.1983). Further, the petitioner did not specifically allege what he would have testified about, except to say that he wanted to testify so the jury would not have heard only one side of the story. This statement is vague and, even considered liberally together with the rest of the record, does not come near to satisfying his burden of showing that counsel's refusal to allow him to testify resulted in his conviction. Further, the trial judge conducted an on-the- record waiver of the petitioner's right to testify, under *State v. Orr*, 403 S.E.2d 623, 624-25 (S.C. 1991), *overruled on other grounds by Franklin v. Catoe*, 552 S.E.2d 718 (S.C. 2001), to determine whether the decision was his and whether it was a knowing and voluntary decision (app. 259-61). Therefore, there was no prejudice. *See Strickland*, 466 U.S. at 687 (defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

13

The petitioner further contends that counsel's investigation into the circumstances surrounding his statement and challenge of it at trial was ineffective. Again, the respondents argue that the state PCR judge's rejection of this allegation was not "contrary to" and did not involve an "unreasonable application of" clearly established federal law, as determined by the United States Supreme Court.

The trial testimony showed that Greenville police officer Tom Chatos was working an automobile break-in at the Ramada Inn on Church Street, during the early morning hours of January 22, 1998 (app. 42-43). The petitioner approached Officer Chatos while he sat in his patrol car writing a report. The petitioner "looked somewhat frantic and said his girlfriend might be in trouble, or that she might be hurt, and if I would come with him to go over and check on her" (app. 43-44). Officer Chatos told the petitioner if he needed help that there was a pay phone nearby. Officer Chatos said he also offered to call EMS (app. 43-44).

The petitioner returned to the Ramada Inn "between fifteen to twenty minutes" later. He again asked Officer Chatos for help (app. 44). This time, Officer Chatos went to the home the petitioner described. It was close to 6:00 in the morning, and it was still dark (app. 46). Officer Chatos and the petitioner both heard groaning or moaning sounds coming from inside the small home (app. 46). The petitioner asked Officer Chatos to "break the door down, and Officer Chatos told the petitioner that "I just couldn't go around doing that. I had no reason to believe she was in trouble at that time, based on how – what I could do [sic]" (app. 47). The petitioner then broke the window in Officer Chatos' presence so that they could gain entry (app. 48). Inside, they found the victim, Margaret Reese, lying in the middle of the floor on a mattress. She was covered in blood (app. 48-49). She was badly hurt and "couldn't even tell me her name." Officer Chatos added, "[i]n other words, she didn't respond verbally to any of my questions" (app. 49). The petitioner asked Reese, "[w]hat happened to you, who did you let in here, who would want to hurt you?" (app. 49).

14

By the time EMS arrived, Reese was unconscious (app. 65), and she died in the hospital about 18 days later without regaining consciousness from blunt force injury to the head (app. 77).

At the time of the offense, Ray Allen was a forensic technician for the Department of Community Services forensic division and, in that capacity, processed the crime scene. After briefly speaking to the officers at the scene, he videotaped and photographed the interior and exterior of the scene. There was a large mattress on the floor with blankets on it. Both the mattress and blankets had suspected blood on them. Officers also found a pipe behind some clothing and boxes in the corner, as well as an apparently blood-soaked toboggan near the doorway to the kitchen. This evidence was then seized, as well as two beer bottles found inside and one bottle found outside the residence. Latent prints from the bottles were sent for further testing, and three were determined to have been made by the petitioner (app. 105-09, 139-46).

A *Jackson v. Denno* hearing was held on the admissibility of the petitioner's statements. Officer Mark White testified that the petitioner was not given *Miranda* warnings at Reese's house because he was not under arrest. Rather, he was transported voluntarily to the police station to talk with the police. The petitioner arrived at the police station at 8:00 a.m. and was then given *Miranda* warnings (app. 147-51). After the petitioner voluntarily executed a written waiver of his *Miranda* rights, which had been read from a printed form and which he appeared to understand, the petitioner gave a statement. He told them he spent the prior day with Reese at her house drinking beer. The petitioner related that Reese was a prostitute. The petitioner told the police he went out that night without Reese. When he returned, he knocked on the door. However, Reese did not answer. "Then I thought I heard her say something, and then I knew she was inside. I kept knocking and got no answers. It made me get kind of angry" (app. 149-59). The petitioner then related how he went and found Officer Chatos at the Ramada Inn (app. 158-60). He

returned with Officer Chatos and found Reese inside. She was "all bloody and I couldn't touch her. Then the police officer called for help" (app. 160).

Detective White testified that "I didn't believe [Petitioner]'s story at the time, no, sir" (app.161). Detective White "asked Mr. Johnson if he would be willing to take a polygraph, and he said a polygraph would show that he didn't do it" (app. 162). White explained, "we do not have a polygraph examiner with the police department. We use several polygraph examiners in the area. This particular morning I used Owen[s] Investigations on Stone Avenue" (app. 162). The police then took the petitioner to Owens' office on Stone Avenue. Detective White stated the petitioner was free to leave at this point but did not ask to do so (app. 173). Detective White said he did not know if the petitioner was read his *Miranda* rights by the private polygraph examiner (app. 173-74).

Detective White said that after Mr. Owens talked with the petitioner, he was called into the polygraph room. The petitioner "started apologizing and telling me what happened" (app. 174). The petitioner admitted he hit Reese in the head with a pipe (app. 165-66). The petitioner said, "I don't know why I did that to Margaret" (app. 166). The petitioner was then taken back to the police station where his confession was reduced to writing (app. 174-77).

Defense counsel Allen moved to suppress the petitioner's confession. The judge denied the motion, noting that the *Miranda* warnings were read to the petitioner and the statement forms he signed had the *Miranda* rights listed at the top, and thus the petitioner waived his rights under *Miranda* (app. 178-80).

Polygraph operator Daryl Owens testified that he asked Detective White if the petitioner had been given his *Miranda* warnings, and Detective White told him that the petitioner had been warned. Mr. Owens stated, "I did not have him in custody. He was there on his own accord." According to Mr. Owens, the petitioner also signed a form to that effect (app. 226-27). Mr. Owens testified that he explained the polygraph procedure to the

16

petitioner, telling him that he "needed to be honest about it where he would not fail the test" (app. 227).  Mr. Owens told the petitioner that if his statement "was not correct, that he was not going to pass the test, and failing the test was just not going to help him, if he had done it, just admit was he had done and let them work with him and try to straighten it out" (app. 232).  At this point, Mr. Owens said the petitioner "became emotional, started crying and said that he had hit her" (app. 228).  Mr. Owens then brought Detective White, and the petitioner gave the same information to Detective White.  Detective White then took the petitioner back to the police department (app. 228).

Following Mr. Owens' testimony, the State argued there was not any break in interrogation that warranted the petitioner being given *Miranda* warnings by the polygraph operator (app. 233-34).  The State noted that in cases that required a re-apprisal of *Miranda* warnings there was a significant break in the time and place of questioning or the defendant invoked his rights and stopped the questioning, neither of which was applicable to this case (app. 233).   Defense counsel Allen argued the petitioner was in custody when he was taken to the polygraph operator's office, and he should have been re-advised of his *Miranda* rights  (app. 234-37).  The judge again ruled the petitioner's confession was admissible, noting that the petitioner had been give *Miranda* warnings prior to going to Mr. Owens' office (app. 237-38).

At the PCR hearing, trial counsel testified that he had reviewed the discovery materials in the petitioner's case, and that there was an issue about an oral statement made to Mr. Owens – a private investigator acting on behalf of the police – when the petitioner was taken for a polygraph examination.  The trial transcript reflects that a *Jackson v. Denno*, 378 U.S. 368 (1964), hearing was held and that counsel unsuccessfully contested the statement (app. 147-238, 372-73).  Counsel explained that the petitioner had given some information to Detective Mark White which was consistent with the petitioner being not guilty.  Law enforcement, however, wanted him to take a polygraph examination.  They

17

took him to the office of Mr. Owens, a private investigator who administers polygraph tests. As soon as they arrived at Mr. Owens' office, Detective White briefed Mr. Owens on the situation and the facts of the case. Mr. Owens then took the petitioner into a room and privately conducted a pre-test interview to learn the petitioner's version. He also told the petitioner that the petitioner had to be completely truthful or the test would not be accurate. The petitioner thereupon gave his statement (app. 375-76). Mr. Owens had asked the petitioner whether he had received his *Miranda* warnings but did not re-advise him of those rights (app. 376). Counsel's recollection was that a polygraph examination was not conducted because the petitioner admitted guilt in the pre-test interview with Mr. Owens, nor did counsel recall any mention of the polygraph before the jury (app. 373-74).

The PCR judge found that the petitioner's testimony concerning his various allegations was not credible but that counsel's testimony was credible. He also found that counsel had unsuccessfully challenged the statement in a *Jackson v. Denno* hearing and that there was no *Miranda* violation (app. 383-85).

Miranda warnings are required for official interrogations once a suspect has been taken into custody or otherwise deprived of his freedom of action in any significant way. *Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966). Here, the petitioner had received and executed a waiver of his *Miranda* rights at approximately 8:00 a.m. After giving his first statement, which took a couple of hours, the petitioner met with Mr. Owens at approximately 11:15 a.m.. Within 10 or 15 minutes of talking to Mr. Owens, the petitioner gave a statement to Detective White in which he admitted hitting the victim in the head with a metal pipe. The statement was put in writing beginning at approximately 12:30 p.m. (app. 154-66). The petitioner did not at any time attempt to invoke his rights.

The state court's findings were a correct application of *Miranda* to the facts of this case and were neither contrary to nor an unreasonable application of *Miranda* and its progeny. Moreover, the PCR judge's factual findings are presumed to be correct, and

the petitioner did not meet his burden of rebutting this presumption by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1).

In ground two, the petitioner contends that the trial court did not have subject matter jurisdiction because of the violation of the "180 day rule," which he asserts stems from S.C. Const. Art. V, § 4,[3] and that the trial court lacked subject matter jurisdiction.  As argued by the respondents, a state court's determination that one of its courts had jurisdiction over a purely state law criminal charge is not a matter which is cognizable in federal habeas corpus.  *Wright v. Angelone*, 151 F.3d 151 (4th Cir. 1998); *Wells v. Egeler*, 532 F.2d 1058, 1059 (6th Cir.1976) ("[d]etermination of whether a state court is vested with jurisdiction under state law is a function of the state courts, not the federal judiciary").  Accordingly, this claim fails.

In ground three, the petitioner again raises claims relating to an alleged *Miranda* violation and the voluntariness of his statement.  For the reasons stated with regard to the petitioner's similar ineffectiveness claim in ground one, these claims fail.

---

[3] A time standard order has been entered for General Sessions cases by the Supreme Court. It reads as follows:

**ORDER**

Pursuant to Article V, §4, of the South Carolina Constitution,

IT IS ORDERED that all criminal cases in the State of South Carolina shall be disposed of within 180 days from the date of the defendant's arrest. Provided, however, that the circuit court may continue a criminal case beyond 180 days by written order if the court determines that exceptional circumstances exist in the case. **This order does not create or define a right of a defendant to a speedy trial.**

IT IS FURTHER ORDERED that the orders of Chief Justice Lewis dated August 17, 1983, and January 13, 1984, which appear at pages CC-ADMIN 12 and 13 of the South Carolina Court Register, are hereby rescinded.

ERNEST A. FINNEY, JR.
CHIEF JUSTICE

Columbia, South Carolina
March 5, 1999

19

In ground four, to the extent the petitioner claims that the trial judge erred by basing his ruling on the admissibility of the statement by a preponderance, his argument lacks merit, as discussed above with regard to ground one. "[T]he burden of showing admissibility rests, of course, on the prosecution." *Brown v. Illinois*, 422 U.S. 590, 604 (1975). However, the prosecution bears the burden of proving, by a preponderance of the evidence, the *Miranda* waiver, *Colorado v. Connelly*, 479 U.S. 157, 169 (1986), and the voluntariness of the confession, *Lego v. Twomey*, 404 U.S. 477, 489 (1972). Further, the trial judge charged the jury on the presumption of innocence as well as the State's burden to prove all elements of murder beyond a reasonable doubt; and his definition of "reasonable doubt" as "a kind of doubt that would cause a reasonable person to hesitate to act" (app. 294) is undeniably constitutional under *Victor v. Nebraska*, 511 U.S. 1, 5 (1994) ("The beyond a reasonable doubt standard is a requirement of due process, but the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so"). *See also id* at 20 ("the instruction provided an alternative definition of reasonable doubt: a doubt that would cause a reasonable person to hesitate to act. This is a formulation we have repeatedly approved, *Holland v. United States*, 348 U.S.[121, 140 (1954)]; *cf. Hopt v. Utah*, 120 U.S. [430, 439-441 (1887)]"). The trial judge likewise instructed the jury that it could not consider the petitioner's statements unless it found that they were given voluntarily after receiving and waiving his *Miranda* rights beyond a reasonable doubt (app. 293-308).

In ground five, the petitioner alleges that his *Miranda* rights were violated. For the reasons stated with regard to the petitioner's similar ineffectiveness claim in ground one, this claim fails.

20

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the respondents' motion for summary judgment be granted. Furthermore, for the same reasons, this court recommends that the petitioner's motion for summary judgment be denied.

s/William M. Catoe
United States Magistrate Judge

July 19, 2007

Greenville, South Carolina